**UNITED STATES ex rel. KLONIS v. DAVIS, Secretary of Labor, et al.**

(Circuit Court of Appeals, Second Circuit. July 13, 1926.)

No. 393.

Aliens ⊝53—Nunc pro tunc order, making recommendation against deportation of convicted alien, held ineffective to prevent deportation (Immigration Act 1917, § 19 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj]).

Nunc pro tunc order, making recommendation against deportation, entered more than year after second conviction of alien for crime involving moral turpitude, *held* insufficient to bar deportation, under Immigration Act 1917, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj).

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus proceeding by the United States, on the relation of Walter Klonis, against James J. Davis, as Secretary of Labor, and others. From an order dismissing the writ, relator appeals. Affirmed.

The relator was born in Poland, and at an age variously fixed at six or seven months and ten years was brought here by his parents. He has lived here continuously since his original immigration, can read English, and professes to be a carpenter. He has been twice convicted of burglary, and has served two terms in prison of more than one year each. The last conviction was in August, 1923, and the last sentence for two years and six months. A warrant of arrest for deportation was issued by the Secretary of Labor on July 13, 1924, while the relator was in prison, on the ground that, having been twice convicted of a crime involving moral turpitude, and having been sentenced each time to more than one year's imprisonment, he was deportable under section 19 of the act of 1917 (Comp. St. 1918; Comp. St. Ann. Supp. 1919, § 4289¼jj). Learning of this proceeding, the relator's attorneys applied to the judge who imposed the last sentence, and on January 16, 1925, procured an order, entered "nunc pro tunc," amending the sentence by recommending that the relator be not deported.

Hearings were had under the warrant before an immigration inspector, and a warrant of deportation was issued by the Secretary of Labor upon his recommendation. The theory of the writ is that the attorneys who represented the relator upon his second trial did not know of his alienage and of the danger he suffered of deportation until the warrant of arrest was taken out against him.

Peasley & Klein and Mascolo, McKnight & Dauch, all of Waterbury, Conn. (James C. Thomas, of New York City, and Edward Mascolo, of Waterbury, Conn., of counsel), for appellant.

Emory R. Buckner, U. S. Atty., of New York City (Charles Lincoln Sylvester, of New York City, of counsel), for appellees.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). The language of the section avoids deportation if the alien "has been pardoned," or "if the court, or judge thereof, sentencing such alien, * * * shall, at the time of imposing * * * sentence or within thirty days thereafter" make a recommendation to that effect. We do not see how we can interpolate as a condition that the recommendation may be made within 30 days after the effect of the sentence is realized. Apparently during its course through the House an amendment was offered and rejected which extended the judge's power indefinitely. U. S. ex rel. Arcara v. Flynn (D. C.) 11 F.(2d) 899. Even without that, we should have felt bound to read the words as they are written. Possibly it was thought that those who for any reason failed to get a timely recommendation would be protected by a pardon, but at any rate the power of the court was exactly circumscribed, and we may not enlarge it. Fortunately it may still be possible to secure a pardon here, the sentence having been served. We cannot suppose that opportunity will not be given for an application.

At any rate we think it not improper to say that deportation under the circumstances would be deplorable. Whether the relator came here in arms or at the age of ten, he is as much our product as though his mother had borne him on American soil. He knows no other language, no other people, no other habits, than ours; he will be as much a stranger in Poland as any one born of ancestors who immigrated in the seventeenth century. However heinous his crimes, deportation is to him exile, a dreadful punishment, abandoned by the common consent of all civilized peoples. Such, indeed, it would be to any one, but to one already proved to be incapable of honest living, a helpless waif in a strange land, it will be utter destruction.

That our reasonable efforts to rid ourselves of unassimilable immigrants should in execution be attended by such a cruel and barbarous result would be a national reproach.

Order affirmed.