OPINION OF THE COURTS
Benjamin Altman, J.
The defendant, an alien, was charged under this indictment with the crime of grand larceny in the second degree (Penal Law, § 155.35) and 12 counts of forgery in the second degree (Penal Law, § 170.10). He now stands convicted of all 13 *274 counts charged in the indictment, pursuant to his plea of guilty to the indictment. At the time of the plea, the court promised the defendant that he would receive a sentence of 11 months on each count with all sentences to run concurrently.
Now, prior to sentence, the defendant moves this court for an order, pursuant to section 241 (subd [b], par [2]) of the Immigration and Nationality Act (INA) (US Code, tit 8, § 1251, subd [b], par [4]) to preclude the Immigration and Naturalization Service (INS) from using this conviction as a ground for deportation. The relevant part of section 1251 (subd [b], par [2]) of title 8 of the United States Code reads as follows: "if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported, due notice having been given prior to making such recommendation to representatives of the interested State, the Service, and prosecution authorities, who shall be granted an opportunity to make representations in the matter.” The order requested is a recomendantion against deportation (RAD). An RAD does not preclude the INS from deporting the alien on other grounds. It only precludes the INS from using a particular conviction as a ground of deportation, if an order of RAD was granted pursuant to section 1251 (subd [b], par [2]) of title 8 of the United States Code. The RAD must be ordered at the time the court first imposes sentence or within 30 days thereafter. In the case at bar, due notice has been served and counsel has served an affidavit in opposition on this court. If, after the INS has been notified and given an opportunity to be heard, the court is persuaded that the issuance of an RAD is warranted, then the RAD is binding on the INS (see Velez-Lozano v INS, 463 F2d 1305; Haller v Esperdy, 397 F2d 211).
The defendant is a Guyana citizen. He was admitted into the United States on November 1, 1977, as a nonimmigrant visitor for pleasure. The 12 counts of forgery in the instant indictment involve a four-month period in 1978, during which the defendant used nine different names at 12 different locations. The grand larceny count involved the theft of over $5,000 by false pretenses. While these criminal convictions are the defendant’s first, they reveal a pattern of larcenous deception. Indeed, the outstanding indictments pending in sister States would indicate that the pattern did not confine itself to New York.
*275 The sole reason for granting an RAD raised by the defendant is that he should not be punished over and above the penal sanctions he has already incurred. Deportation is indeed a drastic measure and at times is the equivalent of banishment or exile. This court is mindful of the teachings of the United States Supreme Court that doubt should be resolved in favor of the alien in a case of deportation (see Barber v Gonzales, 347 US 637; Fong Haw Tan v Phelan, 333 US 6). However, the defendant in this case forfeits little since he was never granted resident status.
It is beyond cavil that convictions for larceny and forgery are convictions of crimes involving moral turpitude, and that such a conviction constitutes a ground for deportation. Section 241 (subd [a], par [4]) of the IN A, section 1251 (subd [a], par [4]) of title 8 of the United States Code provides that an alien may be deported if he: "is convicted of a crime involving moral turpitude committed within five years after entry, and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial.” However, where the period of incarceration is less than one year, one conviction within the meaning of section 1251 (subd [a], par [4]) of title 8 of the United States Code will not suffice as a predicate for deportation. This is equally true if more than one crime arises out of a single scheme of criminal misconduct. It appears, therefore, that if these 13 convictions are crimes arising out of a single scheme of criminal misconduct, the INS would not be allowed to use them as a ground for deportation.
It should be noted that it is not necessary for this court to determine whether these 13 convictions arose out of a single scheme of criminal misconduct. That issue could be resolved before the INS and, if necessary, the Federal courts. However, this court feels that it is in a better position to make this factual determination, which may at least be an aid to the Federal authorities in future proceedings. There are three reported New York cases that have addressed the issue of RAD: People v Grant (53 Misc 2d 675); People v Garcia (53 Misc 2d 303); and People v Ayiotis (49 Misc 2d 831). However, *276 none of the above-cited cases discussed the issue of "a single scheme of criminal misconduct”.
In the absence of New York cases on point, this court resorted to Federal cases which have dealt with this issue. In Jeronimo v Murff (157 F Supp 808), the defendant was convicted of several larceny crimes and one count of conspiracy in a single trial. The court held that all the crimes arose out of a single scheme of criminal misconduct. The crimes spanned a period from 1947 to 1949. The court deemed the indictment charging the defendant with the specific language "common scheme” controlling.
In Chanan Din Kahn v Barber (253 F2d 547), the court held that fraudulent filing of tax returns for two successive years were not crimes arising out of a single scheme of criminal misconduct.
In Zito v Moutal (174 F Supp 531), the defendant was convicted at a single trial of two counts of illegal possession of untaxed liquor. One count had a specific date alleged, and the other alleged a date unknown. Since the INS merely put into evidence copies of the convictions, the court held that the evidence was insufficient to establish that the crimes did not arise out of a single scheme. Two similar cases, Wood v Hoy (266 F2d 825) and Sawkow v INS (314 F2d 34), also dealt with the issue of sufficiency and burden of proof (the burden is on the INS by clear and convincing evidence), and not with the meaning of the term "a single scheme of criminal misconduct”.
In Nason v INS (394 F2d 223), the defendant was convicted of two mail frauds committed nine months apart. The court, in rejecting the claim that both crimes arose out of a single scheme, stated at page 227: "The word 'scheme’ implies a specific, more or less articulated and coherent plan or program of future action, much more than a vague, indeterminate expectation to repeat a prior criminal modus operandi. As used in the statute, 'scheme’ is not to be construed as an abstract concept or strategy capable of future application at any time and any place, but planned definitely for none * * * It should be noted that the statute does not speak in terms of 'common scheme or plan.’ The impropriety of such a test is readily apparent for it could be invoked to save an alien who repeated a successful crime already tried and had the good fortune to employ not only the same methods, but also to have chosen the same or a similar victim. Congress meant to give the alien a second chance, not to spare the recidivist.” The *277 language quoted from the Nason case (supra) is particularly apt for the case at bar. The defendant used nine different names at 12 different Citibank affiliates on 11 different dates, using the same method of forgery in committing the crime of larceny against the same corporate entity. It is quite apparent that the defendant was merely repeating a successful scheme 11 times. It may be a common scheme for the 12 crimes, but definitely not a single scheme encompassing 12 crimes.
If the language of the Nason decision (supra) is not sufficient to establish that these are 12 disparate crimes not arising out of a single scheme, then the case of Pacheco v INS (546 F2d 448) should convince the dubious. In Pacheco, the defendant was convicted of two break-ins during a three-day period. The court rejected the claim that these were crimes arising out of a single scheme of criminal misconduct and stated at page 451: "We are reluctant to adopt a definition of 'single scheme’ that depends on a multitude of factors, for the result is bound to be selective law enforcement and disparities in judicial treatment. This is particularly so to the extent that the subjective factor of forethought is critical. We would also deem it a paradox if the definition excluded this petitioner, whose crimes were committed during periods of intoxication, but saved from deportation one who coolly mapped out several robberies in advance.” The court then went on to define "a single scheme” as one that "must take place at one time; there must be no substantial interruption that would allow the participant to disassociate himself from his enterprise and reflect on what he has done.”
This court finds that the crimes the defendant stands convicted of are not crimes arising out of a single scheme of criminal misconduct (see Nason v INS, supra, and Pacheco v INS, supra). Finding the 13 crimes did not arise out of a single scheme, however, does not bar the granting of 13 RADs to preclude the INS from using any of these convictions as grounds for deportation. Granting a RAD is always an exercise of judicial discretion. Nonetheless, this court is in agreement with the counsel for the INS that there are no facts or circumstances in this case which would justify this relief. Indeed, considering the number and nature of these convictions, it would be an abuse of discretion to grant the relief sought.
Accordingly, the motion for RAD is denied in all respects.